UNITED STATES BANKRUPTCY COURT
<u>NORTHERN DISTRICT OF NEW YORK</u>

In re:                                                              Case No.: 07-32487
                                                                    Chapter 13
    RICHARD D. SCHNEIDER
    AND LORIE A. SCHNEIDER,

            DEBTORS.

**FILED**
APR 28 2008
OFFICE OF THE BANKRUPTCY CLERK
SYRACUSE, NY

APPEARANCES:

| | |
|---|---|
| ROBERT B. RIBAROVSKI<br>Attorney for Richard and Lorie Schneider<br>One Lincoln Center<br>Suite 1010<br>Syracuse, New York 13202 | ROBERT B. RIBAROVSKI, ESQ. |
| FRANCESCO FABIANO<br>Attorney for eCAST Settlement Corp.<br>FABIANO & ASSOCIATES, P.C.<br>1038 Seventh North Street<br>Syracuse, New York 13088 | FRANCESCO FABIANO, ESQ. |
| CHAPTER 13 TRUSTEE<br>250 South Clinton Street<br>Suite 203<br>Syracuse, New York 13202 | MARK W. SWIMELAR, ESQ.<br>(Standing Chapter 13 Trustee)<br>LYNN HARPER WILSON, ESQ.<br>(Staff Attorney to Chapter 13 Trustee) |

MARGARET CANGILOS-RUIZ, U.S. BANKRUPTCY JUDGE

**MEMORANDUM-DECISION AND ORDER DENYING CONFIRMATION**

Both the chapter 13 trustee ("Trustee") and creditor eCast Settlement Corporation ("eCast") have objected to confirmation of the Debtors' plan under Section 1325 of the United States Bankruptcy Code, 11 U.S.C. §§101-1532 (2008), (hereinafter "Code"). At issue is whether Debtors are committing all of their "projected disposable income" to make payments to unsecured creditors under the plan. eCast's objections are twofold: first, Debtors' plan payment

should be calculated using income projected from Schedule I, reduced by expenses set forth in Code § 707(b)(2)(A)(ii),(iii) and (iv); and second, Debtors should be limited to claiming their actual expenses for vehicle ownership on Form 22C and should not be able to take the full standard deductions in amounts that exceed Debtors' actual expenses.[1] Trustee's objection is directed to the wide disparity in Debtors' reported gross income among Form 22C annualized income calculation ($78,483.00), 2006 tax return ($91,200.00) and Schedule I ($95,364.00). If Debtors' Schedule I gross income figure had been used in calculating the plan payment, Trustee asserts that approximately $1,000.00 more per month would be available for unsecured creditors. Trustee further objects that Debtors are presently holding $4,642.00 from an inheritance which is not accounted for in their present plan and should be turned over to Trustee and made available to creditors.

The court has core jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(a), (b)(1), and (b)(2)(L).

## FACTS

Debtors filed their bankruptcy case on September 28, 2007. Debtor Lorie Schneider is a teacher who does not receive income during the summer months. Debtors calculated their "current monthly income" ("CMI")[2] as $6,540.28, their "annualized current monthly income" as $78,483.36, and their "monthly disposable income" as negative $40.43. On Schedule I, Debtors reported their "currently monthly gross wages" as $7,948.03. On Schedule J, Debtors calculated their "monthly net income" as $227.37. Debtors have proposed a monthly plan payment of

---

[1] eCast calculates Debtors' "actual expenses," not as their current monthly payment on contractual obligations, but rather as Form 22C instructs debtors on how to calculate their "future payments on secured claims". *See infra* note 4.

[2] "Current Monthly Income" is defined in Code § 101(10A). CMI is calculated as the monthly average of all income obtained during the six months immediately preceding a debtor's filing, excluding Social Security Benefits and certain other income. 11 U.S.C. § 101(10A). "Annualized Current Monthly Income" is calculated by multiplying CMI by the number 12.

2

$229.00.

Because Debtors' "annualized current monthly income" is above the applicable median family income for a household of four, Debtors are "above the median" debtors, requiring a plan commitment period of 60 months.[3]

When determining their "disposable income," Debtors deducted $187.67 from their CMI on Line 28 of Form 22C. This amount is the difference between the Internal Revenue Service ("IRS") Local Standard deduction of $471.00 for Debtors' transportation/ownership expenses for their first vehicle and Debtors' average monthly payment for their first vehicle of $283.33, calculated in accordance with the instructions on Form 22C.[4]

Debtors also deducted $176.17 from their CMI on Line 29 of Form 22C. This amount is the difference between the IRS Local Standard deduction of $322.00 for Debtors' transportation/ownership expenses for their second vehicle and Debtors' average monthly payment for their second vehicle, calculated in accordance with the instructions on Form 22C.

Debtors then deducted from their CMI the amount of $459.50 for "future payments on secured claims". This amount is the total of their average monthly vehicle payments of $283.33 and $176.17. *See* Line 47c. According to Debtors' proposed chapter 13 plan, Debtors are contractually obligated to pay $500.00 and $302.00 per month for their vehicles.

As noted above, Debtors' 2006 federal tax return reflects gross income of $91,200.00

---

[3] Whether or not debtors are "above the median" or "below the median" is determined by calculations made on Form 22C. Based upon the size of the debtors' household, debtors input the applicable median family income for a family of comparable size (available at www.usdoj.gov/ust/ ) on Form 22C (Line 16) and then determine if their income is above or below that amount. The result determines the number of months debtors must commit to making payments under a plan, referred to as the "applicable commitment period." For debtors whose income is below the applicable median family income, the applicable commitment period is 3 years, and for debtors whose income is above the applicable median family income, the applicable commitment period is 5 years. 11 U.S.C. § 1325(b)(4).

[4] The instructions for Line 47 of Form 22C under Part IV, Subpart C, "Deductions for Debt Payment" state that the "average monthly payment" is the total of all amounts contractually due to each secured creditor in the 60 months following the filing of the bankruptcy case, divided by 60.

3

which on Schedule I is shown as $95,364.00.

## DISCUSSION

In order for a debtor to confirm a plan over an objection by the trustee or the holder of an allowed unsecured claim, the debtor must either pay unsecured claims in full or show that "all of the debtor's *projected disposable income* to be received in the applicable commitment period ... will be applied to make payments to unsecured creditors under the plan." 11 U.S.C. § 1325(b)(1)(B) (emphasis added).

The court overrules eCast's objection to confirmation based on the argument that Debtors' income has substantially changed such that Debtors' Schedule I gross income of $7,948.03, rather than Debtors' CMI of $6,540.28, is Debtors' projected monthly income. Debtors base their plan payments on calculations that use the Schedule I $7,948.03 figure as the income component. Therefore, eCast's objection does not apply to the facts of this case.

As to eCast's objections to the expense side of the projected disposable income calculation, the court first addresses eCast's argument that Debtors have incorrectly calculated their Form 22C expenses. eCast argues that Debtors' Form 22C expenses of $6,580.71 are overstated.[5] Debtors claim the entire Local Standard deductions for Debtors' transportation/ownership expenses, which for a first vehicle is $471.00 and for a second vehicle is $332.00, rather than their actual expense. eCast then argues that Debtors' actual expense portion of the deduction should be their average monthly expense calculated as an amount equal to the loan balances due divided by 60 months, $282.33 and $176.17, respectively.[6]

Code § 707(b)(2)(A)(ii)(I) provides in relevant part that

---

[5] These deductions are taken on Lines 28, 29 and 47 of Form 22C.

[6] While eCast does not state the basis for their argument that "actual" vehicle ownership expense should be calculated in this manner, the Court notes that Line 47 of Form 22C directs debtors to calculate "future payments on secured claims" in this fashion. This calculation results in artificially constructed payment amounts which are inconsistent with Debtors' actual contractual obligations.

4

> The debtor's monthly expenses shall be the debtor's applicable monthly expense amounts specified under the National Standards and Local Standards and the debtor's actual monthly expenses for the categories specified as Other Necessary Expenses issued by the Internal Revenue Service for the area in which the debtor resides, as in effect on the date of the order for relief ... .

11 U.S.C. § 707(b)(2)(A)(ii)(I).

The inquiry begins and ends with Code § 707(b)(2)(A)(ii)(I). *Lamie v. United States Trustee,* 540 U.S. 526, 524 (2004). "[A]s long as the statutory scheme is coherent and consistent, there generally is no need for a court to inquire beyond the plain language of the statute." *United States v. Ron Pair Enters.,* 489 U.S. 235, 242 (1989). The language of Code § 707(b)(2)(A)(ii)(I) is clear and mandatory: "debtor's monthly expenses *shall be* the debtor's applicable monthly expense amounts specified under the ... Local Standards ... ." *Id. (emphasis added).* The only time "actual monthly expenses" are relevant is when determining expenses for categories specified as "Other Necessary Expenses." *See* 11 U.S.C. § 707(b)(2)(B)(ii)(I).

For purposes of calculating their disposable income on Form 22C, Debtors may, and do, properly utilize the full expense amount specified under the Local Standards issued by the IRS.

eCast argues that Debtors' plan payment must be calculated by taking gross projected income, as determined by reference to Schedule I and reducing it by the Code § 707(b)(2)(A) expenses. This method of calculation, eCast argues, will result in a proper measure of projected disposable income, in compliance with Code § 1325(b)(1)(B). As support for this position, eCast cites to *In re Teixeira,* 358 B.R. 484, 486-7 (Bankr. D.N.H. 2006) and *In re Bossie,* 2006 Bankr. LEXIS 3956, * 5 (Bankr. D. Ala. Dec. 13, 2006).[7]

In *Teixiera,* the chapter 13 trustee objected to confirmation where the debtor proposed a plan payment *less* than her disposable income as calculated on Form 22C. 358 B.R. 484. The

---

[7] *In re Bossie* provides no analysis for its one-line statement that "[s]ection 1325(b)(3) mandates that an above-median debtor's expenses be determined under certain IRS guidelines which have been incorporated into the Code at § 707(b)(2)," and is thus of limited value to this court's analysis of the issue. 2006 Bankr. LEXIS 3956, * 5.

5

issue before the court was the relationship between debtor's "projected disposable income" and her "disposable income" calculated on Form 22C. Both the facts and issue presented in *Teixeira* differ from those before this court. Thus, the court declines to look to *Teixeira* for guidance in this case.

The court rejects eCast's argument that Debtors should have subtracted Form 22C expenses from Schedule I income to arrive at projected disposable income. The utility of Debtors' Form 22C expenses is limited to the calculation of their monthly disposable income.

The court turns to the Trustee's expressed concern regarding the discrepancy among Debtors' Form 22C annualized current monthly income of $78,483.00, gross income of $91,200.00 as reported on their 2006 tax returns and Schedule I annualized gross income of $95,364.00. The court finds that the differences in these measures of income are adequately explained by the fact that Mrs. Schneider does not receive regular monthly income throughout the year.

In September 2007, when this case was filed, the six-month look-back period used when calculating Debtors' CMI included summer months during which Mrs. Schneider was not earning income. Thus, Debtors' annualized current monthly income of $78,483.00 is lower than the amount of Debtors' 2006 annual gross income of $91,200.00. Likewise, Debtors' Schedule I annualized gross income of $95,364.00 is inflated to the extent it is not adjusted to take into account the summer months during which Mrs. Schneider will not be earning income.

The court adjourns confirmation for further consideration of Trustee's objection to confirmation related to Debtors' alleged inheritance. The factual record is incomplete in this regard. As such, plan confirmation must be delayed until the facts surrounding any inheritance are established.

Accordingly, for the foregoing reasons, confirmation is delayed for further proceedings consistent with this decision.

So ordered.

Dated: April 28, 2008
Syracuse, New York

_____
Hon. Margaret Cangilos-Ruiz
U.S. Bankruptcy Judge